(Surrogate's Court, Rensselaer County. October, 1903.)

1. CLAIMS AGAINST DECEDENT'S ESTATE—SUPPORT OF MINOR CHILD.
   A father, on the death of his wife, surrendered within a week thereafter their infant child to its grandparents, to be cared for by them, and afterwards remarried, and for 14 years said nothing as to the paying or promising to pay for the infant's care and support. *Held* that, on presentation of a claim against his estate for such support, the evidence was insufficient to imply a promise to pay for the same.

In the matter of the judicial settlement of the estate of Egbert De Freest. Claim disallowed.

Sleicher & Bowen, for executor.

McChesney & Betts, for claimant, George H. Hidley.

HEATON, S. This is a claim for six years' care and support of Ethel, a daughter of Egbert De Freest, deceased. The claimant is the maternal grandfather of the infant, and she has lived in his family since she was about one week old, at which time her mother died. The evidence is given by the grandmother, who says that, after the funeral of his wife, Mr. De Freest said to her that he could not well take care of the baby, and that she better come and get her and take

her home with her. This she did, and has always brought her up and treated her as her own child. The father afterward remarried and established another home, but the infant still lived with her grandparents. Nothing was ever said between Mr. De Freest and the grandparents about their being paid for their care and support of the infant. Mr. De Freest died in August, 1901, and this claim was presented in August, 1903, after the final accounting of his executrix had been commenced; and, on being rejected, consent was filed that it be decided by the surrogate on the final accounting. If this claim is to be allowed, it must be by reason of an express or implied promise by the father to pay for the support charged for. It is not contended that there was an express promise. The claimant rests his claim upon those cases where a recovery has been had against the father in his lifetime for necessaries furnished his child by some stranger in a stranger's home. The leading case is Manning v. Wells, 85 Hun, 27, 32 N. Y. Supp. 601. But it will be noticed that that case and the other cited to sustain the doctrine of implied contract have this special feature—that it was claimed or shown that the parent had clearly failed to provide or attempt to provide the necessaries sued for. Emphasis was laid upon that fact in all of such cases. In Manning v. Wells it was alleged that the father had driven his son from home, and had neglected to provide him with food and care after notice had been served on him by the claimant; and the court was particular to say, "Upon the facts alleged in the complaint, the law raised an implied promise on the part of this defendant to pay for the necessaries furnished to his infant son." An implied promise does not differ from an express promise, except in the evidence by which it is proved. Chilcott v. Trimble, 13 Barb. 504. The claimant must rely on having shown such facts and circumstances as will sustain the law in implying therefrom a promise. Crane v. Baudouine, 55 N. Y. 256. The facts and circumstances proved in behalf of this claim do not sustain the law, in implying a promise to pay this claim: First. Because no words passed between Mr. De Freest and Mrs. Hidley on the day of the funeral, or at any time thereafter, for nearly 14 years, which showed any intention on the part of Mrs. Hidley to charge for the care and support of the infant, or on the part of Mr. De Freest to pay for the same. Second. Because Mr. and Mrs. Hidley were the maternal grandfather and grandmother of the infant, and presumably desired to take and bring up the infant on account of their love and affection for their deceased daughter and her helpless infant child. Third. Because during all the 14 years thereafter until the death of Mr. De Freest the claimant never suggested to Mr. De Freest that he owed him any money for the care and support of the child. Fourth. Because during all of such 14 years Mr. De Freest never offered to pay or did pay claimant anything on account of such alleged implied indebtedness. Fifth. Because by his will Mr. De Freest left a legacy to his said daughter, but never in his life or in his will provided for payment of a debt to her grandfather on his daughter's account.

The evidence of Mrs. Hidley clearly shows that Mr. Hidley and

herself have during all these fourteen years had the sole care and bringing up of the infant in their family as one of the family, and not as a boarder; that they bear toward this grandchild the same love and affection as they have toward their own children; and that she has been reared and treated as their own child.

The case of Williams v. Clements (Sup.) 19 N. Y. Supp. 613, affirmed 137 N. Y. 560, 33 N. E. 338, was one where an executor sought to counterclaim a charge for support of plaintiff's child, and the language used by the court in disallowing the counterclaim is pertinent to the conditions surrounding this claim. The court said:

"There is nothing in the case showing that the testator ever contemplated making any such charge, but, on the contrary, it appears that the child was taken and kept by him at the solicitation of his wife; and it is manifest, in the absence of an express agreement to the contrary, that testator intended to, and did, stand in loco parentis to this child, without any intention or expectation of charging its father for its support, and we think that the law, under such circumstances, raised no implied promise on the part of the father to pay for such support."

One might reasonably find from the evidence and circumstances and action of the parties during all of these years that Mr. De Freest surrendered this child to its maternal grandparents, and that they accepted such surrender, and voluntarily undertook to stand in the relation of parents to her; that such transaction was not the making of a contract upon either side, covering the care and support of the infant, based upon money consideration, but was a mutual arrangement for the best interests of the infant, based on the love and affection which the grandparents and the father had for this young child. The provision for the temporary care of the infant made on the day of the funeral was so satisfactory to all parties as time went on that no one desired to disturb the established pleasant relations, and therefore no thought of a contract, expressed or implied, was ever present in their minds.

Under the well-established rule that claims withheld during the lifetime of the deceased, and presented against his estate for settlement, must be carefully scrutinized, and clearly proved to be valid claims, both in law and equity, a court ought not, upon slight evidence, to imply a contract which the parties had many years to positively express. If either party had desired to make this grandchild's care a subject of contract, they had many years in which the way was open for the making of such agreement. The evidence does not sustain an implied contract, and the claim is therefore disallowed.

Decreed accordingly.